**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

POLYNS BIEREGU,            :

                            :    Civ. Action No. 05-2692(DRD)

       Petitioner,        :

                            :    **O P I N I O N**

       v.                 :

                            :

UNITED STATES OF AMERICA,    :

                            :

       Respondent.       :

_____:

Polyns Bieregu
15267-050
FDC Oakdale
P.O. Box 5010
Oakdale, LA 71463
       Movant.

CHRISTOPHER J. CHRISTIE, ESQ.
United States Attorney
RACHAEL A. HONIG
Assistant U.S. Attorney
970 Broad Street
Newark, New Jersey 07102
       Attorney for Respondent.

**Debevoise, Senior District Judge**

       After a six-week jury trial petitioner, Polyns Bieregu, was convicted of conspiring to import more than 100 grams of heroin into the United States from a place outside thereof and with conspiring to possess with intent to distribute more than 100 grams of heroin.  He was sentenced to 194 months imprisonment.  The Court of Appeals affirmed the conviction and sentence United States v. Bieregu, 16 F.3d 405(3d Cir. 1993), cert. denied, Bieregu v. United

States, 114 S. Ct. 1626 (1994).

As will be detailed below, there followed a number of post conviction relief applications and other proceedings including a petition filed on May 18, 1994 pursuant to 28 U.S.C. §2255 (the "Fist §2255 Petition") which the court denied.  The matter is now before the court on a challenge to denial of the First §2255 Petition in the form of a "Motion to Vacate Conviction and Set Aside Sentence Pursuant to Fed. Rule of Civil Procedure Rule 60(B)(3)(4)(6)."  The government cross-moved "for an order dismissing the second or successive 28 U.S.C. §2255 petition . . . nominally filed pursuant to Fed. R. Civ. Proc. 60(b)."  For the reasons set forth below the court will deny Petitioner's motion and will grant the government's cross-motion to dismiss.

## I. Background

In his First §2255 petition, filed in 1994, Petitioner alleged, among other things, that his court-appointed trial counsel, Marc Calello, Esq., had been ineffective for failing to interview and call as a witness at trial an individual named Nicole Simmons.  According to Petitioner, Simmons would have testified that, contrary to government witness Earnest Okereke's testimony, it was a Mr. Green, not Petitioner, who sent her to Singapore to pick up a quantity of drugs.

The Court dismissed without an evidentiary hearing all the other ground raised in the First §2255 Petition, but because the ineffective assistance of counsel claim raised factual issues, it appointed able counsel to represent Petitioner and ordered an evidentiary hearing.  Petitioner's counsel moved for the production of all government memoranda regarding Simmons.  The court denied the motion but inspected the material in camera to determine whether the materials contained information subject to disclosure pursuant to Brady v. Maryland, 373 U.S. 83 (1963).

2

As petitioner states, the court "read the memoranda and found no such material.  Rather, the interviews not only confirmed the Simmons drug transaction about which Okereke testified at trial, they suggested that Ms. Simmons had knowledge of other drug transactions in which Petitioner participated."

Appointed counsel undertook representation of Petitioner with utmost dedication.  He flew to Texas in order to interview Ms. Simmons.  After he completed his investigation he reported at the evidentiary hearing that he would present no evidence to supplement Petitioner's petition.  The obvious conclusion to be drawn was that he had unearthed no evidence that Ms. Simmons would have contradicted Okereke's testimony about Petitioner's role in the Singapore transaction.  On January 19, 1995 the court ordered that the ineffective assistance of counsel claim be denied.  Petitioner appealed and the Court of Appeals affirmed on October 10, 1995.

On February 14, 1996, Petitioner filed a petition (the "Second §2255 Petition") claiming that the government violated his due process and Brady rights by failing to turn over to the defense interview memoranda in which Ms. Simmons allegedly exculpated Petitioner and identified another person as the person who had recruited her to import narcotics into the United States.  On June 6, 1996 the court denied the petition and the Court of Appeals affirmed.

On July 25, 2000, Petitioner initiated a proceeding in the Court of Appeals seeking leave to file another §2255 petition (the "Third §2255 Petition") in which he sought to raise claims under Apprendi v. New Jersey, 530 U.S. 466 (2000).  He contended that Apprendi created a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable to Petitioner.  By order dated September 14, 2000 the Court of Appeals denied Petitioner's application, finding that he had failed to meet the standard for

3

second or successive petitions.

Petitioner also filed a series of actions pursuant to 42 U.S.C. §1983. In the most recent he sought civil damages against the United States for alleged violations of the Vienna Convention on Consular Relations (the "Vienna Convention") occurring as a result of his arrest in the underlying criminal matter and the failure of the government to advise him of his right to consular notification. The court dismissed Petitioner's complaint by order dated May 1, 2003. Bieregu v. Ashcroft, 259 F. Supp. 2d 342 (D.N.J. 2003).

The instant action was filed on May 23, 2005.

## II. Petitioner's Contentions

With respect to his principal claim for relief, Petitioner denies that his petition is a successive §2255 petition; rather, he asserts that he is proceeding pursuant to Fed. R. Civ. P. 60(b)(3), (4) and (6) in order to obtain an order vacating the court's order of January 19, 1995 dismissing his ineffective assistance of counsel claim. He alleges that the proceeding which produced the judgment of January 19, 1995 was fraught with fraud between movant's counsel and the government in which they conspired to suppress evidence crucial to Bieregu in that proceeding. Movant states that Ms. Simmons provided Mr. Ryan with the fact that she knew Mr. Green only and that Mr. Green was the man who had sent her to Singapore and that she provided the government with the information during their previous interview. Petitioner alleges that "Mr. Ryan, working in cohaut (sic) with the government, suppressed this information material and helpful to Bieregu's evidentiary hearing from seeing the light of the day." (Pet. at 1).

In his response to the government's motion to dismiss, Petitioner elaborates on these contentions stating:

In this case, Ms. Nicole Simmons will testify to the fact that during Mr. Ryan's visit at the Federal Correctional Institution where [s]he was incarcerated that she told Mr. Ryan that Mr. Green, not Polyns Bieregu, was the very individual who sent her to Singapore.  She will further testify that she told the government during their interview that Mr. Green, not Polyns Bieregu, was the individual who sent her to Singapore.  She will further testify that the government presented her with a picture of one individual of which she could not identify to be that Mr. Green.  Simmons testimony will establish the fact that Bieregu's counsel suppressed this fact.  Her testimony will further establish the fact that the government memoranda report which the court examined in chambers and concluded the interview not only confirmed the Simmons drug transaction about which Okereke testified at trial, they suggested that Simmons had knowledge of other drug transaction in which petitioner participated, was a feral (sic) fallacy against Bieregu, and the court was not apodictic (sic) on the fact contained in the government memoranda report, as to whom Simmons actually identified in the memoranda report, which the court examined <u>in camera</u>.  Simmons' testimony will contradict the court's conclusion and establish the fact that Simmons identified Mr. Green, not Polyns Bieregu, in the government memoranda report.  Mr. Ryan will be called to testify as to whom Ms. Simmons identified to be the very individual who had sent her to Singapore during his interview with her.  And Mr. Ryan's testimony will further reveal that Simmons identified Mr. Green to be the man who sent her to Singapore.  All these facts call into question the integrity and the manner in which the first Section 2255 was procured.

(Pet. Response at 2).

Petitioner further alleges that "Mr. Ryan, however, suppressed the fact that Ms. Simmons had told him that it was Mr. Green, not Plyns (sic) Bieregu, who had sent him to Singapore, and that she had told the government of the same individual during their previous interview.  Upon his return, Mr. Ryan instead told Bieregu that Ms. Simmons was simply a hostile witness without details of her hostility.  Upon which Petitioner snapped and insisted on her production to testify and for eyewitness identification.  Mr. Ryan calmed movant down and advise (sic) him that the double jeopardy argument should afford him relief."  (Pet. Response at 3).

The only basis for Petitioner's charges leveled at Mr. Ryan and the government is information he states a friend provided him:

> Quite recently, on December 2004, Mr. Jeff Ozuka, a friend of movant, acting on movant's instructions contacted Ms. Simmons in Texas.  Ms. Simmons told Mr. Ozuka upon questioning that she had told Mr. Ryan during interview that she knew Mr. Green and that Mr. Green was the man who had sent her to Singapore and that [she] had told government of the identity of this individual (Mr. Green) during their interview.  And further that the government presented her with picture of one individual of which she told them that was not Mr. Green, and couldn't identify the picture of the individual.

(Pet. at 5).

Petitioner did not submit a certification of either Mr. Jeff Ozuka or of Ms. Simmons to support his contentions.

### III.  Rule 60(b)

The government argues persuasively that the petition should be construed as a second or successive §2255 petition and dismissed for lack of jurisdiction because he has not obtained authorization to file it from the Court of Appeals.  Under 28 U.S.C. §§2255 and 2244, "[b]efore a second or successive application . . . is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."  §2244(b)(3)(A).  Although Petitioner styles his petition a Rule 60(b) motion the government contends that because Petitioner actually seeks to mount yet another attach on his underlying criminal conviction his application is in fact a §2255 petition.

In Pridgen v. Shannon, 380 F.3d 721 (3d Cir. 2004), the Court of Appeals held that whenever a purported Rule 60(b) motion seeking to reopen a previous §2255 proceeding actually seeks to attack collaterally the petitioner's underlying conviction rather than "the manner in which the earlier habeas judgment was procured," the matter should be treated as a successive §2255 petition subject to the limitations on such petitions as provided by law.

It is readily apparent that Petitioner's objective is to discredit the testimony of

6

government witness Ernest Okereke and thereby, as he put it in the title to his motion, "to vacate conviction and set aside sentence."  In view of the paucity of the evidence that Petitioner has cited to support his speculation that his assigned counsel and the government conspired to deprive him of evidence which would be useful in challenging Okereke's testimony, it would not be unreasonable to conclude that his petition is nothing more than another of his §2255 petitions challenging his underlying criminal conviction on the ground that Nicole Simmons should have been called to testify in his defense at trial and that her testimony would have weighed in his favor.  However, facially the petition is an attack on the manner in which the earlier §2255 judgment was procured.  Accordingly, it will be evaluated under Rule 60(b) standards.

Rule 60(b)(2) relates to "newly discovered evidence which by due diligence could not have been discovered in time for a new trial under Rule 59(b)."  Rule 60(b)(3), one of the subsections of Rule 60(b) upon which Petitioner specifically relies, provides that a court may relieve a party from a final civil judgment for reasons of "fraud . . . misrepresentation, or other misconduct of an adverse party."  The new evidence which Petitioner advances in his conversation with his friend Ozuka, concerning Ozuka's conversations with Nicole Simmons, and the fraud or misrepresentation he advances is the alleged failure of his counsel to report that Ms. Simmons told him that it was a Mr. Green, not Petitioner who instructed her to travel to Singapore on a drug mission.  Disregarding the insubstantiality of any factual underpinning of these allegations, neither can be advanced under subsections (2) or (3).  Motions brought for these reasons must be brought "not more than one year after the judgment, order, or proceeding was entered or taken."  The judgment which is the subject of the instant petition was entered on or about January 19, 1995.  The instant petition was filed more than ten years later on May 23,

2005.

Subsections (4) of Rule 60(b), upon which Petitioner also relies specifically, provides that a party may seek relief from a final civil judgment when the judgment is void.  "A judgment can be voided on two grounds: (1) if the rendering court lacked subject matter jurisdiction or (2) if it acted in a manner inconsistent with due process of law."  Construction Drilling, Inc. v. Chusid, 2005 WL 1111760, *3 (3d Cir. May 11, 2005).  This court obviously had jurisdiction.  To resolve the issue that Petitioner raised it appointed counsel to represent him and held an evidentiary hearing.  The judgment was affirmed on appeal.  None of the proceedings were conducted in a manner inconsistent with due process of law.

Petitioner also relies on subsection (6) of Rule 60(b) which permits a court to grant relief for "any other reason justifying relief from the operation of the order."  Courts have defined the circumstances in which this broadly phrased provision may be applied.  Motions brought pursuant to it are subject to the general requirement that Rule 60(b) relief is "intended to be a means for accomplishing justice in extraordinary situations."  Moolenaar v. Government of the Virgin Islands, 822 F.2d 1342, 1346 (3d Cir. 1987).  Relief under subsection (6) is only appropriate when the movant can show "(1) that the reason for the relief sought under 60(b)(6) is not embraced within the various provisions of 60(b)(1-5); and (2) that exceptional circumstances exist which warrant the granting of extraordinary relief."  Stradley v. Cortez, 516 F.2d 488, 494 (3d Cir. 1975).

Petitioner's assertion that his counsel failed to submit to the court evidence that Ms. Simmons contradicted Okereke's testimony can only be the speculation of a person disappointed with the result of the hearing held ten years ago.  He supports it neither with a certification of his

8

supposed informant nor with a certification of Ms. Simmons herself.  The Supreme Court denied certiorari in Petitioner's criminal case in 1994.  Since that time and prior to the instant motion Petitioner filed two §2255 petitions, a motion seeking leave from the Court of Appeals to file a third §2255 petition and at least eight civil actions against his trial counsel and public officials and agencies, all of which were decided against him.  It is evident that Petitioner will continue to advance theories in support of his effort to set aside his original conviction and sentence.  His most recent allegations must be viewed in the light of this history of litigation.  Viewed in that light his vague allegation that his counsel in the first §2255 proceeding suppressed evidence does not constitute an exceptional circumstance which warrants granting extraordinary relief.

Nor does the alleged court bias warrant extraordinary relief.  This was a contention that could have been raised on the appeal from the dismissal of the First §2255 Petition.  It was not raised and the Court of Appeals affirmed the dismissal.

To the extent that the alleged conversation between Petitioner's friend Mr. Jeff Ozuka, and Ms. Simmons constitutes new evidence, the motion falls within subsection (2) of Rule 60(b) (not subsection (6)) and is untimely because filed more than one year after entry of judgment on the First §2255 Petition.

### IV.  <u>The Vienna Convention</u>

Petitioner's second ground for relief is his claim that his underlying conviction is defective because the government failed to inform him of his right to consular notification pursuant to the Vienna Convention.  He relies on the decision of the International Court of Justice in the <u>Case Concerning Avena and the Other Mexican Nationals (Mexico v. United States of America)</u>, 2004 I.C.J. 128, and a memorandum from the President of the United States to the

9

U.S. Attorney General dated February 28, 2005, in which President Bush states that he has "determined, pursuant to the authority vested in me as President by the Constitution and laws of the United States of America, that the United States will discharge its international obligations under the [Avena] decision . . . by having State Courts give effect to the decision in accordance with general principles of comity in cases filed by the 51 Mexican nationals addressed in that decision."

Notwithstanding the 2004 Avena decision and the President's 2005 memorandum, the basis for Petitioner's claim, the requirement of consular notification, has been available since the date of his arrest. It is not a claim that can be raised in a Rule 60(b) motion under any of the Rule's subsections. It is not an attack on the manner in which the January 19, 1995 judgment was procured. It is a claim that challenges Petitioner's underlying conviction. Thus it is a claim that must be raised in a §2255 petition. Pridgen, supra.

The claim based upon a violation of the Vienna Convention is a second or successive §2255 petition over which the court does not have jurisdiction. If there be any merit to Petitioner's argument that the procedural default doctrine does not apply in the present circumstances, he must first present these arguments to the Court of Appeals in the context of an application for permission to file a successive petition.[1]

## IV.  Conclusion

The court will deny Petitioner's motion to vacate his conviction and set aside his

---

[1] The recent case of Medellin v. Dretka, 544 U.S. ____ (2005) suggests the difficult questions that will arise in a §2255 petition case or upon an application to a Court of Appeals for a certificate of appealability in which the petitioner or applicant relies upon the Vienna Convention, the Avena decision of the International Court of Justice and President Bush's February 28, 2005 Memorandum for the Attorney General.

sentence.  It will grant the government's cross-motion to dismiss the petition.  To the extent the motion constitutes a petition brought pursuant to 28 U.S.C. §2255 a certificate of appealability shall not issue.


       /s/ Dickinson R. Debevoise    

Dated: September 12, 2005              DICKINSON R. DEBEVOISE
                                 U.S.S.D.J.